band or minor children," did not affect the questions in this case, but was only applicable to cases where there was no special agreement between a husband and wife as to her compensation, but that she having the right to her earnings could agree to work for her husband about his business as well as for a stranger. In July, 1873, Mrs. Hay purchased of her husband ten sewing machines, paying him therefor $500 in cash, the money paid being borrowed on Mrs. Hay's individual credit, of a relative. The court said that, as there was no fraud alleged, none could be presumed, and that the purchase was fair and open, made in the usual course of business, and must be so regarded. He, therefore, was of opinion that the property belonged to Mrs. Hay, and an order was entered directing the assignee to return it to her. This decision is important, as the question whether a married woman was entitled to compensation for services performed for her husband as agent has never before been judicially passed upon.

## Case No. 6,253.

In re HAY et al.

[2 Lowell, 180; [1] 7 N. B. R. 344.]

District Court, D. Massachusetts. Oct., 1872.

BANKRUPTCY — DESIGNATION OF MONEY AS "NECESSARIES."

The assignee in bankruptcy may designate a sum of money as "necessaries," under section 14 of the act [of 1867 (14 Stat. 522)].

[Cited in Re Thompson, Case No. 13,938.]

[In bankruptcy. In the matter of Ira Hay and others.]

A. V. Lynde, for bankrupt.

Boardman & Blodgett, for assignee.

LOWELL, District Judge. The question presented in this case is, whether the assignee has power to allow the bankrupt any part of a sum of money which was in the possession of the latter as his separate property when the joint petition was filed. Section 14 excepts from the operation of the assignment the necessary household and kitchen furniture, and such other articles and necessaries of such bankrupt as the assignee shall designate and set apart; having reference in the amount to the family, condition, and circumstances of the bankrupt, but altogether not to exceed in value, in any case, the sum of $500, &c. In Thornton's Case [Case No. 13,994], arising in the Cape Fear district of North Carolina, it was held that money might be set apart. Brooks, J., considered the purpose of the law to be to furnish temporary support to honest bankrupts, whose property had been all surrendered to their assignee; and that this object would be defeated in

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

some most meritorious cases, if money could not be considered a necessary. In two other cases the contrary has been held, on the ground, as I understand, that "articles and necessaries" must be taken to refer to things ejusdem generis with household and kitchen furniture, such as fuel and provisions. In re Lawson [Id. 8,149]; In re Welch [Id. 17,366].

I am of opinion that a fair construction of the act may include money as necessaries, for the reasons given by Judge Brooks. The law intends to encourage a full disclosure and surrender of all property, and to provide for the immediate wants of the bankrupt, whether he happens to be a householder or not; and that an insolvent should by accident or design have acquired a full stock of necessary furniture, fuel, provisions, and the like, should put him in no better situation than one, with equal needs, who has not had equal foresight or good fortune. Considering the intent of the statute, I am of opinion that money necessary for the support of the bankrupt is within its terms. Under a statute giving the admiralty court jurisdiction of suits for necessaries supplied to a foreign ship, money lent to the master to buy necessary supplies has been held within the law, not by subrogation, but as being described by the language. The Sophie, 1 W. Rob. Adm. 368; The Onni, Lush. 154. True, the assignee cannot see that the money is applied to the purchase of necessaries; but in case of the need which the law supposes will be proved by him to exist, and which it refers to in speaking of the condition and circumstances of the bankrupt, it may be presumed that the sum supplied will go to his use and that of his family.

The most decisive authority remains to be cited. The bankrupt act of 1841, § 3, [5 Stat. 440], was identical with the act of 1867, so far as this case is concerned, the one being literally copied from the other; and Mr. Justice Story decided that the assignee could set apart a sum of money to a bankrupt, wherewith to pay his board and that of his family. In re Grant [Case No. 5,693]. He further held that the court could not make the allowance in the first instance, for that it was wholly within the authority of the assignee; subject, of course, to an appeal to the court, though the learned judge does not mention that, but it is provided for in that statute as in this.

I give no opinion whether the condition and circumstances of the bankrupt in this case will require the assignee to set apart any, and if any what, sum of money; but decide that this matter must first be determined by him, subject to my final decision if his determination should be excepted to.

I do not mean to say that this question of fact and discretion might not be submitted to the court by consent of both parties; but I do not understand it to have been so submitted in this case.

Ordered: that the assignee may designate

and set apart to the bankrupt, N. C. Stowe, such sum, not exceeding $500, if any, as he shall find to be necessary, under section 14 of the bankrupt act; subject to exceptions and the final determination of the court, as provided by said section.

NOTE. The assignee refused to make an allowance to this bankrupt or either of his partners; and, upon appeal from this decision, there was evidence tending to show that each of the bankrupts had earned something since the bankruptcy, and two of them had no family dependent on their exertions, and were skilled workmen in their business of boot and shoe manufacturers; that the wife of the third had some little property; that the assets were small compared with the debts, the case presenting the appearance of a consumption of the capital for the personal expenses of the partners. The judge sustained the action of the assignee. In a case brought up a few days later (In re Steele [unreported]), the testimony was that the bankrupt and his family had suffered much from illness about the time of the bankruptcy; that much of their clothing and bedding had been destroyed for fear of infection; that a settlement would probably have been made with the creditors, if the negotiations had not been broken off by the illness of the debtor. He was an old man, and his assets were considerable. An allowance of money was ordered.

---

### Case No. 6,254.

#### HAY v. ALEXANDRIA & W. R. CO.

[1 Hughes, 168.] 1

Circuit Court, E. D. Virginia. March, 1877.

EQUITY—BILL TO SET ASIDE SATISFACTION OF JUDGMENTS.

1. The complainant had purchased all existing judgments against the defendant railroad company; and afterwards purchased all the company's property sold under a trust deed junior to the judgment liens; and then marked as satisfied the judgments he held, on the proper dockets. In a subsequent litigation the deed of trust and his purchase under it were adjudicated to be illegal and void. He thereupon filed a bill in chancery against the company, praying that his satisfaction marked against the judgments might be set aside, that the defendant be decreed to pay the judgments, and that he might have general relief.

2. A demurrer to this bill, on the ground that he had full remedy at law, and that therefore a bill in equity did not lie, was overruled.

In chancery. The complainant [Alexander Hay] had purchased sundry judgments, which were all that were outstanding, against the defendant company [the Alexandria & Washington Railroad Company], which were duly recorded on the judgment docket in the proper clerk's office designated by the laws of Virginia. These judgments were superior to a deed of trust subsequently executed upon the property of the company. With the purpose of reorganizing the company on a new basis, the complainant afterwards purchased all its property at a sale made by the trustees under the deed of trust. Having thus become sole owner by this purchase, he made in writing a memorandum on the prop-

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

er record in the proper office of the court, declaring that the judgments which he had purchased were satisfied. He did this in full faith that the sale to him under the deed and his title by purchase were valid. This deed and sale were afterwards attacked, and, after a course of litigation, were pronounced by the supreme court of the United States invalid and null. The complainant now brings his bill in equity, reciting in detail the facts just set forth, and praying that the satisfaction entered upon the judgments which he had purchased be set aside; that the defendant be adjudged and decreed to pay him the amounts of the judgments with interest; that the judgments be decreed to be a lien upon the property of the defendant, as of the date when the satisfaction was entered; and that other and further relief be granted as the nature of his case requires. To this bill a general demurrer was interposed; the demurrant insisting, generally, that there was no jurisdiction in equity, because the complainant had full and compact remedy by action at law against the company.

H. H. Wells, for complainant.
S. Ferguson Beach, for defendant.

HUGHES, District Judge. The only remedies at law are, action upon the judgment, scire facias to revive the judgment, issuing execution thereon, and motion to set aside the satisfaction. In regard to the first three remedies, the plaintiff would be met with the record of satisfaction, and this being a matter of record could not be avoided by pleading at law. "There can be no averment in pleading against the validity of a record, though there may be against its operation." Chit. Pl. 481, 354; Biddle v. Wilkins, 1 Pet. [26 U. S.] 692. It needs no citations of authority to support the proposition, that a record cannot be revised or contradicted by parol proof. It is not competent in an action at law on a specialty, for the defendant to avoid it by pleading that it was obtained by fraudulent misrepresentations made by the plaintiff. 2 Rand. (Va.) 426; Taylor v. King, 6 Mumf. 358. Certainly a record stands upon as high a ground as a specialty. As to actions on contracts, this rule has been changed by special statute in Virginia, but such statute does not affect a record. A motion may be made to quash an execution because a court has control over its own process, but a motion to set aside a satisfaction is entirely different. Such a record is not the action of the court, but of the party alone. But even on a motion to quash an execution if it involves the question whether satisfaction is properly entered, it is a case proper for a court of equity. In Crawford v. Thurmond, 3 Leigh, 85, when an execution had been indorsed for the benefit of Crawford by Shroder, the owner of the judgment, and the judgment was satisfied of record by Shroder, a bill was filed